BLOCK *v.* TAYLOR.

1. APPEAL AND ERROR—PLEADING—SUFFICIENCY—FRAUD.

Where the trial court proceeded upon the assumption that fraud was properly charged in defendant's plea and notice, and counsel for plaintiff raised no objection, pleading *held*, sufficient.

2. CONTRACTS—FRAUD—EVIDENCE—QUESTION FOR JURY.

Testimony by defendant that plaintiff's agent induced him to enter into contract for the purchase of 25 barrels of whisky to be ordered out of bond as needed, by orally guaranteeing the quality of the whisky to be equal to sample, and executing a separate agreement allowing defendant to cancel the order if he did not find the proposition profitable, providing he paid for what he used, and further agreeing to furnish advertising matter and an agent to help introduce the whisky in adjoining dry counties, but that the whisky delivered was very inferior to the sample, and he was unable to sell it over his bar, that no advertising matter was sent and no effort made by plaintiff to introduce the whisky in adjoining counties, and that he failed to deliver to defendant the government certificates as agreed, *held*, sufficient to justify the court below in submitting the question of fraud to the jury.

3. SAME—SEPARATE AGREEMENT—CONSTRUCTION—RESCISSION.

Despite the condition contained in the order to the effect that the "order slip together with said certificates constitute the complete contract, no other agreement being recognized," *held*, that the contemporaneous agreement signed by the agent permitting defendant to cancel the order under certain conditions should be construed as part of the contract; the agent's name appearing in the order itself, and being the only one representing plaintiff known to defendant.

4. SAME—PROFITS—RESCISSION.

Inasmuch as the government tax on the whisky was $1.10 per gallon, and the purchase price was 90 cents to $1 per gallon, testimony that defendant sold it around $2

per gallon, *held*, to establish the fact that no profit was realized from the sale.

5. ESTOPPEL — CONTRACTS — AFFIRMANCE — FRAUD — INTENT — QUESTION FOR JURY.
    As to whether defendant's action in ordering two barrels of the whisky out of bond after canceling the original order constituted an affirmance of the order and worked an estoppel to deny its validity on the ground of fraud, or was but an attempt on defendant's part to regain the amount of money that he claimed was fraudulently obtained from him in excess of the price of the goods already received, *held*, an issue properly submitted to the jury. OSTRANDER, C. J., dissenting.

Error to St. Clair; Tappan, J. Submitted April 16, 1918. (Docket No. 80.) Decided July 18, 1918.

Assumpsit by Burt K. Block, doing business as the Empire Distillery Company, against William H. S. Taylor on certain promissory notes. Judgment for defendant. Plaintiff brings error. Affirmed.

*James A. Muir,* for appellant.

*Walsh & Walsh,* for appellee.

In this case plaintiff sued to recover from defendant on ten promissory notes for $100 each, amounting with interest, at the time of the trial, to $1,207.20. The notes were given on December 1, 1911, as part payment of the purchase price of 25 barrels of "Blockdale" and "Old Empire" whisky, the order for which follows:

"PORT HURON, MICH., Dec. 1, 1911.
"EMPIRE DISTILLERY CO.,
    "B. K. Block, Prop.,
        "200 Fifth Ave., New York.
"*Gentlemen:* I have this day bought of you through H. Kramer 25 barrels whisky in bond and have received warehouse contract certificates covering said whisky as follows:

| W.C.C.No. | Brand | Age | Proof Galls. | Pr. per gal. | Total. |
|---|---|---|---|---|---|
| 30500 | Old Empire | '06 | 24100 | $0.90 | $434.56 |
| 30501 | Old Empire | '06 | 24185 | .90 | |
| 3537 | Blockdale | '07 | 24331 | 1.00 | |
| 3791 | Blockdale | '07 | 24867 | 1.00 | |
| 3992 | Blockdale | '07 | 24932 | 1.00 | 741.31 |

$1,175.87

"Cash $175.80 and notes for $1,000; said whisky or its equivalent to be sent upon my order, on compliance with terms of contract and after payment of notes as they mature. This order slip, together with said certificate, constitute the complete contract, no other agreement being recognized, said contract being subject to the approval of your home office and to be binding upon you only upon receipt by your home office of all moneys and notes paid hereon.

"W. H. S. TAYLOR,
"(Signature of Purchaser),
"517 Water Street (Address)
"Port Huron, Mich.
".....................Salesman."

The declaration was upon the common counts with copies of the notes attached. Under the plea of the general issue the defendant gave notice that he would show that at the time said contract was entered into,

"said plaintiff warranted that such whisky should be and was equal in quality and description to a certain sample of each kind thereof then and there produced and shown to the defendant by the said plaintiff, and plaintiff then and there represented to the defendant that said amount of whisky contracted to be sold would be of the total value of $1,175.87, and that he would, upon the execution of said contract, turn over certain "certificates" and did represent to defendant that such certificates were government certificates and stood in the place and stead of said property, and that said plaintiff would furnish defendant certain advertising matter, to wit: samples of whisky, signs and advertisements, and would cause such advertising matter to be distributed throughout the county in which defendant lived and the dry counties adjoining the same,

and to furnish their agent to oversee such work, and to have the same done prior to the holidays, to wit: December 20, 1911. And said defendant relying upon said warranty, agreement and representations aforesaid, agreed to purchase said whisky and did pay to said defendant certain sums of money, to wit: the sum of $500.00 as part payment upon said contract for whisky, and did order and receive from plaintiff certain whisky, to wit: 2 barrels thereof, and has performed and stood ready to perform everything to be done on his part under the terms of said agreement. Yet the said plaintiff, disregarding his said agreement, did not nor would perform the same nor carry out his promises and undertakings therein, but did furnish to said defendant the said two barrels of whisky received by defendant as aforesaid, which were not equal in quality and description to the said samples shown and produced to the said defendant by the said plaintiff as aforesaid, but were and are of a different and much inferior quality and description and of much less value; and failed to deliver to defendant the said government certificates for said whisky; and failed and neglected to furnish the said advertising matter and to distribute the same in defendant's locality in accordance with the terms of his said promise and agreement, and the value of said 25 barrels of whisky was not the sum of $1,175.87, but was greatly less than said sum, to wit: the sum of $600.00 on, to wit: the 15th day of March, A. D. 1912; and said defendant did cancel the said agreement and give notice to the plaintiff thereof on account of the said breach of warranty and failure of plaintiff to fulfill his contract with regard to advertising and on account of his false representations as to the total value of said whisky, and the nature of said certificates, that at the time said defendant had only received from plaintiff and used whisky to the value of $100.00. * * *

"That said contract was subject to the condition, and defendant was given the right thereunder to cancel the same in case he should not find said proposition profitable, providing, he should pay plaintiff for what he had used; that in accordance with said contract, defendant paid to plaintiff on account thereof, and on account of whiskys to be ordered by him thereunder,

at the request of plaintiff large sums of money, to wit: the sum of $500.00; that defendant ordered and received from defendant whiskys under said contract to the amount and value of to wit: $100; that defendant did not find that this proposition under said contract was profitable, but on the contrary found that it was unprofitable, and on to wit: the 15th day of March, A. D. 1912, did cancel said order and contract under the provisions of said contract, and did give plaintiff due notice of his election to cancel the same, whereupon, said plaintiff became and was indebted to defendant on account of moneys paid under said contract over and above the value of whisky delivered thereunder in a large sum, to wit: the sum of $400.00."

At the time the contract was executed defendant ordered immediate delivery of two barrels. It was the claim of defendant that Kramer, who was designated in the contract as plaintiff's agent, represented himself to be from Detroit; that he told defendant his firm, the Empire Distillery Co., was desirous of establishing an agency in the city of Port Huron for the sale and distribution of their whisky in adjacent dry counties. He also testified that the agent, Kramer, produced samples of the whisky he proposed to sell which defendant tested and found to be of good quality; that the agent on behalf of his principal, Block, agreed to furnish printed matter advertising the whisky and to aid in securing its distribution to customers in dry counties. He also testified, and this is undisputed, that before he signed the contract Kramer executed and delivered to him the following agreement:

"PORT HURON, MICH., Dec. 1, 1911.
"W. H. S. TAYLOR, CAFE,
    "517 Water St.
"In case Mr. Taylor does not find this proposition profitable, he can cancel the order, providing he pays me for what he has used and we will return to him

his notes, for 25 barrels of whisky in bond, Blockdale, Old Empire, at any time.

,"H. KRAMER."

He further testified, and in this his testimony was supported by that of his bartender, who had been in the business for 15 years, that the whisky in the two barrels delivered was of a very inferior quality, and that he was unable to sell it over his bar because of its poor quality. It is undisputed in the record that no advertising matter was sent to defendant and no effort made by plaintiff to introduce the product in the dry counties surrounding Port Huron.

It was the claim of plaintiff upon the trial that the contract was complete and evidenced solely by the signed order, the check for partial payment and the notes in suit; that the contemporaneous agreement of Kramer was not part of the contract and not binding on plaintiff.

The court charging the jury said:

"The written agreement by Kramer that Taylor could terminate the written order if the deal was not profitable does not bind Block,"

but permitted the jury to consider said agreement, together with all the evidence, in order to determine whether it was part of a general scheme to defraud defendant and for the purpose of misleading or inducing the execution of the contract by Taylor. It seems that the two barrels of whisky ordered out of bond at the time the contract was made arrived in Port Huron about the 25th of December, 1911. Before its arrival, and on December 20th, defendant wrote plaintiff the following letter:

"PORT HURON, MICHIGAN, December 20, 1911.
"EMPIRE DISTILLERY COMPANY,
  "200 Fifth Avenue, New York.
  "*Gentlemen:* Since giving your representative, Mr. H. Kramer, an order for 25 barrels of whisky in bond,

two barrels of which were ordered out of bond and which I expect to receive in a few days, I have made arrangements to sell my business to Mr. Guise, a gentleman residing in this city. I explained our deal to him and he tells me that he would be pleased to continue it on the same basis. But this will necessitate my paying you for these two barrels of whisky, which you have shipped, you returning me my notes, etc., as per the written agreement which I have with Mr. Kramer to this effect.

"Please let me hear from you immediately, also write Mr. R. W. Guise, 517 Water Street, Port Huron, Michigan, in regard to this matter. Thanking you in advance, I remain,

"Very sincerely,

"W. H. S. TAYLOR."

On December 22d, plaintiff wrote defendant agreeing to the transfer of the contract to Mr. Guise, but in said reply said nothing with reference to the claim of defendant under Kramer's written agreement. On January 6th, the two barrels of whisky having been received by defendant, he wrote plaintiff a letter canceling the order; demanding a return of his notes, and the money he had paid in. excess of the value of the two barrels delivered. In this letter defendant said:

"Mr. Kramer has certainly not lived up to his agreement, which he made here with me December 1st, in any way, and I am candid to say to you that, under the circumstances, I should have canceled this order and terminated this transaction regardless of whether I was going to sell out or not. Mr. Kramer told me that he would have abundance of Christmas advertising here by the middle of December, and it all ended in talk."

The record does not contain the reply of plaintiff to this demand of defendant's, but it is evident that it was not complied with. Thereafter and in February defendant ordered on to Port Huron two other barrels of said whisky and as soon as it arrived caused

it to be attached.  Plaintiff replevined the whisky so attached and nothing further was done under the attachment suit.  Defendant testified upon the trial that the amount of cash paid on December 1st was $103 in excess of the value of the two barrels of whisky delivered.  The court instructed the jury that if the contract was untainted by fraud the plaintiff was entitled to a verdict for the full amount of the notes with interest, and further:

"On the other hand, if you find from the proofs that the entire transaction was the result of a fraudulent scheme to induce Taylor to give the order in question, as claimed by Taylor, and if you find that in pursuance of the plan, Kramer used samples of high grade or good grade of liquor while an inferior grade was delivered; if you find that Kramer made representations that he was establishing an agency for the liquor of his principal, Block, and would furnish printed matter to advertise it and that Kramer gave Taylor a written agreement signed by himself to allow Taylor to cancel the contract if unprofitable, and these several transactions were false and fraudulent and intended to deceive Taylor and did deceive him and procured from him the contract and notes in question, then the contract is vitiated by the fraud and plaintiff cannot recover.  In short, if Kramer procured the contract and notes by means of fraud, as I have explained, then his principal, Block, cannot retain the benefits of the fraud."

The jury returned a verdict for defendant in the sum of $128.75.

BROOKE, J. (*after stating the facts*).  The first proposition presented by plaintiff, appellant, is that the court erred in holding that under the plea fraud was charged.  We think plaintiff is foreclosed upon this question.  Counsel for plaintiff objected to the introduction of evidence on the question upon the ground that the prior dealings leading up to the con-

tract were merged in the contract itself, whereupon the following occurred:

"*The Court:* I understand fraud is charged.

"*Mr. Walsh* (counsel for defendant) : Certainly.

"*The Court:* We will receive it."

It will be noted that no claim was made at that time that the plea was insufficient to support evidence of fraud in the making of the contract. During the examination of the defendant, counsel for plaintiff objected to certain testimony stating:

"This is an action for fraud against us on account of this being a counterclaim, and value is not a basis for an action of fraud."

At the close of the evidence a motion was made by plaintiff's counsel to strike out the testimony, in which it is asserted:

"The defendant has pleaded fraud, to a certain extent, in the making of the contract, under the holding of your honor in overruling the motion, but he has failed in his proofs to sustain such plea as against plaintiff."

In his request to charge counsel asked no direction upon the ground that fraud was not charged, but did make a request for a direction upon the ground that there was no evidence of fraud introduced. Under these circumstances the trial court having proceeded upon the assumption that fraud was properly charged in the plea, and counsel for plaintiff having raised no objection to the pleading, the same will in this court be held sufficient. A further claim of plaintiff was made both by motion for a direction of a verdict and also set forth in his request to charge that there was no evidence introduced tending to show fraud sufficient to vitiate the contract. Upon a review of the whole record we are unable to say that the court erred in submitting the question of fraud to the jury. *J. B. Millet Co.* v. *Andrews,* 175 Mich. 350. Despite the

condition contained in the order to the effect that the "order slip together with said certificates constitute the complete contract, no other agreement being recognized," we are of opinion that the contemporaneous agreement signed by Kramer permitting the defendant to cancel the order under certain conditions, paying for what he had already used, should be construed as a part of the contract. Kramer's name appears in the order itself and is the only one representing plaintiff known to the defendant. Plaintiff in his deposition denied that he had ever authorized Kramer to make such an agreement; nevertheless when the defendant wrote to plaintiff, within 20 days after the execution of the original order, calling his attention to his rights under Kramer's agreement, the plaintiff did not in any way repudiate said agreement as being beyond the scope of the authority of his agent. Counsel for plaintiff asserts that neither in his correspondence nor his evidence does defendant claim to cancel the contract by reason of the fact that the proposition had become unprofitable. While defendant was unable to give the exact sum per gallon for which he sold the whisky received by him, he did testify that he sold it around $2 per gallon. Inasmuch as the government tax was $1.10 per gallon, and the purchase price was from 90 cents to $1 per gallon, it is entirely clear that no profit could have been realized from the sale.

It is further claimed by counsel for appellant that defendant, by ordering out of bond two barrels of whisky in the month of February, after he had received and tested the first two barrels, affirmed the contract and he was therefore estopped from repudiating it thereafter. Defendant's explanation of his act in this regard was:

"I wanted to bring the lawsuit here instead of having to go to New York city to try it."

The court submitted this question to the jury, instructing them that if they found that the second two barrels ordered in February were so ordered as a continuation of the deal, under the original order, that such action would constitute an affirmance of the original order and work an estoppel against defendant, but further:

"If, on the other hand, this order was but an attempt on Taylor's part to regain the amount of money that he claimed was fraudulently obtained from him in excess of the price of the goods and expenses of the barrels of whisky that he received, and you so find from the proofs, then you are warranted in finding that the second order does not operate as an estoppel."

The judgment in this case recovered by defendant represents the amount of money paid by him to plaintiff in excess of the value of the two barrels of whisky delivered by the plaintiff to him under the contract. Plaintiff has been paid for the goods he has delivered and has in his possession the balance of the order as well as the sum representing the judgment over and above the value of the goods delivered.

There has been no miscarriage of justice in this case, and the judgment is affirmed.

BIRD, MOORE, STEERE, FELLOWS, STONE, and KUHN, JJ., concurred with BROOKE, J.

OSTRANDER, C. J. In my opinion a buyer cannot, for an alleged ulterior purpose, order goods on his contract and then repudiate it.