### MOREHEAD MFG. CO. v. HOWARD'S D. G. S., Inc., ODORLESS CLEANERS.*

#### No. 5380.

Court of Appeal of Louisiana.
Second Circuit.

March 1, 1937.

*Rehearing denied April 1, 1937.

R. A. Crain and W. B. Massey, both of Shreveport, for appellant.

Harry V. Booth, of Shreveport, for appellee.

HAMITER, Judge.

The defendant, under a written instrument signed and executed by its manager and secretary-treasurer, P. G. Saffron, contracted to purchase from the plaintiff corporation, a manufacturer of Detroit, Mich., certain cleaning machinery for the price and sum of $250. The contract was obtained through the efforts of plaintiff's agent who resided in the city of New Orleans. It was duly accepted and approved by the manufacturer.

The machinery was placed in transit, and when it reached Shreveport, its destination, defendant refused to accept it from the carrier. Thereafter, it was sold at public auction by the railroad company to satisfy freight and storage charges.

The contract forms the basis of this suit in which plaintiff seeks to recover the agreed purchase price, with interest and attorney's fees.

Defendant urges three alternative defenses to the petition, namely:

(1) That Saffron was without express or implied authority to execute the contract on behalf of defendant corporation.

(2) That his signature was procured through error of fact by gross misrepresentation and fraud, and to the knowledge of plaintiff's agent, as to the cost of installation of the equipment.

(3) That the alleged indebtedness has been settled through a compromise agreement.

After a consideration of the case on its merits, the trial court granted judgment favoring the defendant and dismissing the suit at plaintiff's cost. An appeal to this court was then sought and obtained by plaintiff.

The above-mentioned second special defense appears to be meritorious, thus compelling an affirmance of the judgment, and we shall discuss only it in this opinion.

A preponderance of the evidence in the record sustains the following facts: When defendant acquired the cleaning establishment in which the machinery was to be used, it was fully equipped and in good operating condition. No major changes were essential to provide satisfactory service. The substitution of plaintiff's equipment was desirable only in the event that its installing cost would not be excessive. Saffron, defendant's manager, was unfamiliar with the proposed machinery and the manner in which it would be installed, and, therefore, could not ascertain the installation cost thereof except from plaintiff's agent, who was thoroughly familiar with and had full knowledge of it. While negotiations were pending for effecting the sale, the agent made a survey of the plant to see whether or not the system could be incorporated therein without unusual expense. On the completion of the survey, Saffron was informed that the cost of installing would not exceed $20. This item was an important and material consideration in the consummation of the sale, and on the strength of the agent's representation defendant's manager executed the contract.

After the arrival of the equipment at the freight depot in Shreveport, the agent went to that city to supervise its installation. A list of the fittings and pipes necessary for the work was given to Saffron, and, on his seeking to purchase them, he learned that they would cost more than $75. He also ascertained that the construction of a concrete pit was necessary, and this would require a further expenditure of $25. The receipt of this expense information caused

defendant's refusal to accept the shipment from the railroad authorities. Subsequently, the machinery was sold, as before stated, and this suit resulted.

Some of the articles of the Louisiana Civil Code which pertain to the vitiation of a contract because of error of fact in its confection are the following:

"1819. Consent being the concurrence of intention in two or more persons, with regard to a matter understood by all, reciprocally communicated, and resulting in each party from a free and deliberate exercise of the will, it follows that there is no consent, not only where the intent has not been mutually communicated or implied, as is provided in the preceding paragraph, but also where it has been produced by—Error; Fraud; Violence; Threats."

"1821. That is called error of fact, which proceeds either from ignorance of that which really exists, or from a mistaken belief in the existence of that which has none."

"1823. Errors may exist as to all the circumstances and facts which relate to a contract, but it is not every error that will invalidate it. To have that effect, the error must be in some point, which was a principal cause for making the contract, and it may be either as to the motive for making the contract, to the person with whom it is made, or to the subject matter of the contract itself."

"1824. The reality of the cause is a kind of precedent condition to the contract, without which the consent would not have been given, because the motive being that which determines the will, if there be no such cause where one was supposed to exist, or if it be falsely represented, there can be no valid consent."

"1825. The error in the cause of a contract to have the effect of invalidating it, must be on the principal cause, when there are several; this principal cause is called the motive, and means that consideration without which the contract would not have been made."

"1826. No error in the motive can invalidate a contract, unless the other party was apprised that it was the principal cause of the agreement, or unless from the nature of the transaction it must be presumed that he knew it."

The record discloses that Saffron, when signing the purchase agreement, labored under the kind of error of fact that invalidates a contract. He would not have consented to the transaction if he had known that the installation charge would exceed $100. Reliance was placed on the agent's representation that such expenditure would not be more than $20, and this low cost was the principal cause or motive underlying the agreement. Without that consideration the sale would not have been made, and this was known to plaintiff's representative.

It is earnestly argued and contended by plaintiff's counsel that the manufacturer in this case is not bound by the representations made by its agent without authority. In this connection, our attention is called to the following provision of the written contract which Saffron signed for and on behalf of his company: "It is understood this contract covers all agreements concerning this transaction of every name and nature, and no representations made by an agent or any other person not included herein shall be binding."

Observance should be made at this point that the testimony offered by defendant herein was not for the purpose of contradicting, and it did not contradict, the provisions of the written instrument; nor did it affect the subject-matter thereof. The universally recognized parol evidence rule was in no manner offended. The testimony was tendered and properly admitted in an effort to show that defendant was prevailed upon to execute the agreement, and did so execute it through error of fact, by reason of the misrepresentations of plaintiff's agent. Defendant's attack is made solely on the method employed in the procurement of the agreement. The object is to impeach its validity as a whole.

Our search of the Louisiana jurisprudence has furnished no case, and we have been cited to none, which involves an identical or closely analogous factual situation. Furthermore, there appears to be a diversity of opinion among the courts of the common-law states with reference to the question here presented. 2 American Jurisprudence, verbo Agency, § 365.

The rule announced in the Restatement of the Law of Agency, § 260, paragraph 2, is as follows: "A contract obtained by an agent through fraudulent misrepresentations of facts may be rescinded by the other party although it provides that it shall not be affected by representations not contained therein."

A pertinent comment in connection with that provision is: "The rule stated in this Subsection does not offend the parol evidence rule, as that rule prevents the modification of an integrated contract by statements not a part of it, while by this rule the effect of the contract is avoided. If the agent, instead of making a statement of existing facts, makes a promise which is at variance with the statements in the integrated contract, the other part cannot show such promise to vary the terms of the agreement, under the rules stated in the Restatement of Contracts, §§ 237-244. If, however, the unauthorized promises are not at variance with the integrated contract and would be enforcible against the principal if authorized, the principal cannot enforce the terms authorized without ratifying the unauthorized promises, although the other party had notice that the agent was not authorized to make them."

The following is given as the correct statement of the law by 3 Corpus Juris Secundum, verbo Agency, § 236, p. 156: "A rescission of contract may be had against an innocent principal because of unauthorized misrepresentations by his agent, even though the rescinding party had notice of the agent's lack of authority. This rule proceeds upon the theory that an innocent principal so contracting may not be permitted to enrich himself by reason of his agent's fraud. So, the third person may rescind although, with respect to the subject matter as to which oral misrepresentations are made by the agent, the written contract either expressly provides that the agent has no authority to make representations other than those embodied in the contract, or stipulates that no representations other than those embodied therein are to be made, or were made, in its procurement, or are binding on the principal. This right of the third person to rescind the contract because of the agent's fraud is not dependent upon which party to the contract initiates proceedings thereon."

Plaintiff herein is a Michigan corporation and the contract on which this suit is based was accepted by it at its home office in Detroit. The question of whether such instrument is to be treated as a Louisiana or a Michigan agreement has not been raised by the parties. However, if it should be contended that it is to be interpreted and enforced according to the laws of Michigan, we find the holding of the courts of that state to be in accord with the rule above quoted from Corpus Juris Secundum, and which we consider to be sound.

Plaintiff's agent, in the case of J. B. Colt Co. v. Reade, 221 Mich. 92, 190 N.W. 672, 673, procured from defendant a written order for a carbide lighting system for his farm buildings. The contract stipulated that "no agent or representative of the company has made any statements or agreements, verbal or written, modifying or adding to the terms and conditions herein set forth." When the agreement was in its formative state, defendant informed the agent that his basement, in which the equipment was to be placed, was small and that it contained a furnace. The reply was that the plant could be placed "right beside" the furnace. Defendant later ascertained that the carbide generator could not be installed nearer then fifteen feet to a furnace or stove. As it was impossible for the generator to be used in the basement without its being less than fifteen feet from the furnace, defendant refused the shipment upon its arrival. In upholding the rescission of the contract, the court said: "The representation here relied on to establish fraud is not in the nature of a warranty. It was in no way related to the character, quality, or title of the thing ordered or its efficiency or suitability to perform the service expected. In order to install the plant, defendant must have a place to put it. The natural place was the basement of his house, which was to be lighted by it. The assurance of plaintiff's agent that it could be safely installed therein was in no way a warranty within the statutory or generally accepted definition of that term. Whether it could be safely placed near the heating plant was a matter of which plaintiff's agent had full knowledge and defendant no information. To secure such information, defendant made inquiry of the agent. Had defendant been informed of the necessity of having a 15-foot space between the generator and the furnace, he might have and probably would have, under the proofs, declined to give the order by reason of the expense to which he would be put in the enlargement of his basement. If he was induced to sign the order by a false statement in the nature of a representation, he would be justified in rescinding the contract. The understanding of the parties, expressed in the order, that it covered all agreements between the parties and that 'no agent or

representative of the company has made any statements or agreements, verbal or written, modifying or adding to the terms and conditions herein set forth,' did not preclude the defendant from relying on this defense. Peck v. Jenison, 99 Mich. 326, 58 N.W. 312; Millet Co. v. Andrews, 175 Mich. 350, 141 N.W. 578; Mishler v. International Harvester Co., 188 Mich. 104, 153 N.W. 1059."

Viewing the found facts in the case at bar in the light of the aforediscussed· authorities, we are of the opinion that defendant was justified in refusing to accept the cleaning machinery, and that the special defense urged and discussed herein should prevail.

. Accordingly, the judgment is affirmed.